# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

In Re:                                    )
                                          )
SANDRANETTA LATISHA MARIA JONES,  )        Case No. 23-00226-TOM-13
                                          )
        Debtor.                           )

---

## MEMORANDUM OPINION AND ORDER

This bankruptcy case came before the Court for hearing on December 18, 2025, on the Ex

Parte Emergency Motion for Temporary Restraining Order, to Re-Impose Automatic Stay, to

Enjoin Foreclosure, to Compel Servicer Reconciliation, and to Preserve Evidence as to Regions

Bank (Doc. 234, the "Motion") filed by the Debtor and the Response (Doc. 238, the "Response")

filed by Regions Bank. Appearing before the Court were Debtor Sandranetta Latisha Maria Jones,

acting *pro se*; David Hearne, counsel for Regions Bank; and Mary Frances Fallaw, Staff Attorney

for the Chapter 13 Trustee. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 151, and

157(a) and the District Court's General Order Of Reference Dated July 16, 1984, As Amended

July 17, 1984.[1] This is a core proceeding arising under Title 11 of the United States Code as defined

---

[1] The General Order of Reference Dated July 16, 1984, As Amended July 17, 1984 issued by the United States
District Court for the Northern District of Alabama provides:

> The general order of reference entered July 16, 1984 is hereby amended to add that there be hereby referred
> to the Bankruptcy Judges for this district all cases, and matters and proceedings in cases, under the
> Bankruptcy Act.

in 28 U.S.C. § 157(b)(2)(G) and (O).[2] This Court has considered the pleadings, arguments, and the law, and finds and concludes as follows.[3]

## FINDINGS OF FACT[4]

### Background

Sandranetta Latisha Maria Jones (the "Debtor"), while represented by counsel, filed this bankruptcy case under Chapter 13 of the Bankruptcy Code on January 27, 2023. The Debtor's Chapter 13 plan (Doc. 5, the "Plan"), confirmed on May 17, 2023, provided that the Debtor would make semimonthly payments of $2,275.00[5] for a total of 60 months to the Chapter 13 Trustee. Out of the Debtor's payments the Chapter 13 Trustee would pay the following secured debts[6] through fixed monthly payments:

| | |
|---|---|
| $ 3,073 | mortgage arrearage on one rental property – American Drive |
| $ 2,000 | mortgage arrearage on a second rental property – 77th Way South |
| $15,393 | 2016 BMW 535i |
| $69,109 | 2019 GMC Yukon Denali |
| $ 4,049 | Furniture |

Doc. 5. In addition, the Chapter 13 Trustee would pay unsecured claims, in excess of $100,000, in full over the term of the case from the funds paid into the case by the Debtor.[7] The confirmed plan

---

[2] 28 U.S.C. §157(b)(2)(G) and (O) provide as follows:

  (b)(2) Core proceedings include, but are not limited to–

    (G) motions to terminate, annul, or modify the automatic stay;

    . . . .

    (O) other proceedings affecting the liquidation of the assets of the estate or the

    adjustment of the debtor-creditor or the equity security holder relationship . . .[.]

28 U.S.C. § 157(b)(2)(G), (O).

[3] This Memorandum Opinion and Order constitutes findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, applicable to contested matters in bankruptcy pursuant to Federal Rule of Bankruptcy Procedure 7052 and Federal Rule of Bankruptcy Procedure 9014.

[4] Pursuant to Rule 201 of the Federal Rules of Evidence, the Court may take judicial notice of the contents of its own files. *See ITT Rayonier, Inc. v. U.S.*, 651 F.2d 343 (5th Cir. Unit B July 1981); *Florida v. Charley Toppino & Sons, Inc.*, 514 F.2d 700, 704 (5th Cir. 1975).

[5] Two semimonthly payments of $2,275 equals a total amount of $4,550 to be paid by the Debtor to the Trustee each month.

[6] The Debtor has filed numerous objections to claims; however, this Memorandum Opinion and Order addresses only the Motion and the Response.

[7] It is important to note that in every Chapter 13 case there is a possibility that a debtor's payments to the Trustee would have to be modified during the case, for example, due to claims filed or missed payments by a debtor.

2

further provided that the Debtor would pay the following secured debts directly to the creditor beginning with the February 2023 payment:

$1,394    regular monthly mortgage payment to Regions Bank for 115 Americana Drive
$   831    regular monthly mortgage payment to Regions Bank for 893 77th Way South

Doc. 5. The Debtor's Plan further provided that her student loans in the amount of $155,738.00 are in forbearance and therefore no payments or distributions are due from the Trustee on these loans so long as the forbearance continues.[8] Doc. 5.

On January 9, 2024, the Trustee filed a Motion to Dismiss (Doc. 39) the Chapter 13 case based on the Debtor having defaulted on her plan payments to the Trustee. A hearing was held on the Trustee's Motion to Dismiss on February 6, 2024 and, based on the Trustee's records, the Debtor should have paid a total of $40,950.00 to the Trustee by that time; however, she had paid only $18,650.00 and was thus significantly behind on her payments. *See* Doc. 42. The Debtor, her attorney, and the Trustee appeared at the hearing and, despite the significant payment default, this Court entered an Order on February 7, 2024 (Doc. 43) which denied the Trustee's Motion to Dismiss conditioned upon the Debtor resuming her Chapter 13 payments by March 7, 2024 in the increased amount of $2,408.00 semimonthly.[9] The Order further provided that if the Debtor defaulted on her payments then the Trustee could file a Notice of Continuing Default, at which time the Court could grant the Trustee's Motion and dismiss the case without further hearing.[10]

---

[8] Since 11 U.S.C. § 523(a)(8) excepts most student loans from discharge, even if the Debtor pays this Chapter 13 case in full, she will still be responsible for these loans in addition to accrued interest.

[9] A Chapter 13 plan cannot exceed 60 months from original filing date of the case. *See* 11 U.S.C. §1325(4). In this case, based on Debtor's Form 122C-1 (Chapter 13 Statement of Your Monthly Income and Calculation of Commitment Period) filed with her petition and schedules (Doc. 1, at 46-49), the plan had to be a 5-year repayment period because her Form 122C-1 reflects that the Debtor has above median income and thus in this case her commitment period is 5 years. Since there is a 60 month or 5-year limitation on a plan and the repayment period, when a debtor misses payments to the trustee, the plan payments have to be adjusted or modified to ensure all payments are made on or before the expiration of the 60 months.

[10] It is routine for the Court, when issuing an order conditionally denying a Trustee's motion to dismiss for payment default, to allow the Trustee to file a Notice of Continuing Default should a debtor default on payments again. The purpose of a notice of continuing default is to let the Court know that a debtor did not meet the conditions of the Court's order and therefore the case is due to be dismissed for nonpayment.

Case 23-00226-TOM13    Doc 252    Filed 01/23/26    Entered 01/23/26 12:17:06    Desc
Main Document    Page 3 of 21

Doc. 43. The Trustee did file a Notice of Continuing Default (Doc. 45) on June 25, 2024, pursuant to that Order. Shortly thereafter, on July 1, 2024, the attorney for the Debtor filed a Notice of Conversion (Doc. 46) that served to convert the Debtor's case to one under Chapter 7 of the Bankruptcy Code. As often happens, the appointed Chapter 7 Trustee employed an attorney to represent him in the case. After the Chapter 7 Trustee and his attorney investigated the Debtor's assets, they began taking steps to liquidate some of the assets to pay creditors.[11]

While this case was in Chapter 7, on October 4, 2024, Regions Bank filed a Motion for Relief from Automatic Stay (Doc. 80, the "RFS Motion") regarding the property located at 893 77th Way S., Birmingham, Alabama. The RFS Motion was supported by a Fact Summary Sheet (Doc. 81) as required by Rule 4001-1 of the Local Rules as well as the affidavit of Michael Pattin, representative of Regions Bank. On October 7, 2024, the Clerk's Office sent out a Notice of Final Hearing (Doc. 82) giving notice that a hearing on the RFS Motion would be held on October 31, 2024 in accordance with Rule 4001 of the Federal Rules of Bankruptcy Procedure. The Notice of Final Hearing was mailed to the Debtor. *See* Doc. 85. As of the time the RFS Motion was filed, the mortgage was contractually due for the September 1, 2023 payment through the September 1, 2024 payment – at least 12 months. *See* Doc. 80. In fact, since the Debtor filed her case in January 2023, and the RFS Motion was filed in early October 2024, the Debtor should have made 20 mortgage payments during that time. However, as shown by the Fact Summary Sheet, the Debtor had made only 7 payments during that time. That means the Debtor missed 13 payments during that time period alone. According to the Fact Summary Sheet, the total post-petition arrearage and accrued costs totaled almost $11,000. *See* Doc. 81.[12] While the Debtor did not attend the hearing

---

[11] It is the duty of a Chapter 7 trustee to review a debtor's schedules for potential assets that could be used to pay unsecured creditors and, if assets are found, to liquidate the assets and distribute the proceeds.

[12] The documents filed in support of the RFS Motion also reflect that the original note and mortgage were executed on May 29, 2020, in the amount $123,000.00. As of the filing of the RFS Motion, the payoff was $122,671.07. The

4

on the RFS Motion, which took place as scheduled on October 31, 2025, her attorney did appear. Based on the affidavit filed with the RFS Motion and the other evidence before the Court, the Court granted the RFS Motion by its Order (Doc. 91) entered on November 1, 2024. The Debtor neither filed a motion to alter or amend the Order granting relief from stay, nor appealed the Order.

On November 21, 2024, only twenty days after the Court granted the RFS Motion, the Debtor's attorney filed a Motion to Convert to a Chapter 13 Case (Doc. 94, the "Motion to Convert"). A hearing on the Motion to Convert was held on December 19, 2024, at which the Debtor and her attorney were present. At that hearing (*see* Doc. 106, audio recording of hearing held December 19, 2024) this Court noted its reluctance to convert the case given the significant issues that had arisen while the case was pending as a Chapter 7 case.[13] Counsel for Regions Bank was present at that hearing, and the Debtor was informed that because Regions Bank received relief from the automatic stay it could move forward with foreclosure proceedings at any time, even if the Court converted the case back to Chapter 13. The Debtor was further informed that the fees due to the attorney for the Chapter 7 Trustee would be around $16,000 and would likely be paid prior to any other debts if the case was converted back to Chapter 13. In addition, the Court concluded on the record that the terms of the prior confirmation order would be reinstated, with the attorney for the Debtor to file a motion to modify the payments as appropriate. The Debtor agreed that she would have to pay creditors 100% of their claims. Despite its reluctance, the Court, by Order entered on December 20, 2024 (Doc. 107), converted the case back to Chapter 13 to

_____

Debtor claimed on her schedules that the value of the property was $122,900.00. From these figures it is evident that the Debtor had barely reduced the principal on the obligation, and that the Debtor had virtually no equity in the property.

[13] While the case was pending under Chapter 7, the Debtor wrongfully attempted to divert from the Chapter 7 Trustee rental payments from a tenant who was residing in one of the rental houses. The Debtor went so far as threatening then suing the tenants to prevent them from properly remitting the payments to the Chapter 7 Trustee. The Debtor's conduct resulted in unnecessary litigation between the Trustee and the tenants until the time the Court learned during a trial what the Debtor was doing. The unnecessary litigation also resulted in significant attorney fees having been incurred by the attorney for the Chapter 7 trustee – fees that will ultimately be paid by the Debtor.

Case 23-00226-TOM13    Doc 252    Filed 01/23/26    Entered 01/23/26 12:17:06    Desc
Main Document    Page 5 of 21

allow the Debtor a final opportunity to pay her obligations and retain both rental houses that were subject to mortgages.

As explained, at the time the Debtor converted the case back to Chapter 13 the Order granting the RFS Motion had been entered and based on the Debtor's default in payments, Regions Bank could have elected to proceed with its state law remedies, including foreclosure, at that time. The Court presumes that Regions Bank did not proceed with its state law remedies right after entry of the Order granting relief from the stay and after conversion back to Chapter 13 to allow the Debtor an opportunity to cure the arrearages and resume direct payments. That Regions Bank did not immediately start to foreclose, for whatever reason, does not prevent it from later pursuing foreclosure if the Debtor did not keep her direct payments current or did not make her Chapter 13 plan payments from which her substantial arrearages were to be paid.

Once the Debtor converted back to Chapter 13, the original confirmed plan remained valid and effective, except to the extent the plan provisions were modified after a motion and order. *See* 11 U.S.C. § 1329. Thus, upon conversion, the Debtor was obligated to resume her plan payments to the Trustee and pay directly to Regions Bank the monthly mortgage payments due on the two pieces of real property that the Debtor identified as "rental property." However, when the case was converted back to Chapter 13, the Debtor had less time in which to complete her plan; therefore, on January 9, 2024, the Debtor's attorney filed a Motion to Modify Chapter 13 Plan (Doc. 115, the "Debtor's Motion to Modify") to change some of the plan terms so that it could be completed within the time prescribed by the Bankruptcy Code. In the Debtor's Motion to Modify she proposed to surrender the 2019 GMC Yukon Denali and increase the plan payments to the Trustee to $5,000.00 per month. In addition, the Debtor proposed to increase the fixed monthly payments the Chapter 13 Trustee would make on the mortgage arrearage claims, which had significantly

6

increased from the time the Debtor originally filed the case, likely due in part from the Debtor's failure to pay the regular monthly mortgage payments before the conversion to Chapter 7 and while the case was pending under Chapter 7. Further, the Debtor proposed to remove the fixed payment on her 2016 BMW 535i because the debt secured by the BMW had been "paid in full." The Debtor's Motion to Modify was granted by Order dated January 31, 2025 (Doc. 125) and thus the terms of the confirmed Plan were modified.

On June 9, 2025, the Chapter 13 Trustee filed his own Motion to Modify Plan after Confirmation (Doc. 141, the "Trustee's Motion to Modify") to increase the plan payments from the $5,000.00 per month to $6,392.00 per month to ensure the case would be paid in full in the months remaining.[14] On the following day the Court's Notice and Order (Doc. 142) was entered providing that the Trustee's Motion to Modify was granted and the Debtor's plan payments were increased to $6,392.00 per month unless an objection was filed in 21 days.[15] On June 27, 2025, the Debtor, now acting on her own, filed a Motion to Vacate Order Granting Trustee's Motion to Modify Plan Due to Lack of Notice and Opportunity to Respond (Doc 145, the "Motion to Vacate"). Since this motion was filed within the 21-day objection window, it was due to be treated as an objection and due to be heard. Shortly after the Debtor filed the Motion to Vacate on her own, the attorney who had been representing the Debtor filed a Motion to Withdraw as Debtor's Counsel (Doc. 149, the "Motion to Withdraw").[16] Both the Motion to Vacate and the Motion to

---

[14] Although the plan was modified by the Debtor's attorney in January of 2025, Regions Bank filed amended claims in May 2025 to include the mortgage payments not made by the Debtor before the conversion to Chapter 7 and while the case was pending under Chapter 7. These amended claims, now in an increased amount, likely prompted the Trustee's Motion to Modify.

[15] This type of notice and order, commonly referred to as a "negative notice order" or "order on negative notice," is used on a routine basis throughout the Northern District of Alabama. When a court enters an order on negative notice, the terms of the order will not not go into effect until the period for objections has passed or, if an objection was filed, until the time the objection is resolved.

[16] The Court speculates that the Debtor's Attorney sought permission to withdraw because the Debtor was filing her own documents and possibly the Debtor was not following the advice of her attorney.

7

Withdraw were set for a July 24, 2025 hearing. On the day before the hearing, a document titled "Motion to Excuse Appearance or Continue Hearing" (Doc. 154) was filed and essentially asked for a continuance of the hearing. The document bore the signature of "Sandranetta Jones," but it appears that someone other than the Debtor signed the Debtor's name to the document.[17] On the morning of the hearing another document titled Motion to Excuse Appearance or Continue Hearing (Doc. 155) and a Motion for Extension of Time (Pro Se) (Doc. 156) were entered after having arrived at the Courthouse by way of mail. These two documents were apparently actually signed by the Debtor.

The Court proceeded with the July 24, 2025 hearing with regard to the Motion to Withdraw and granted the Motion to Withdraw by an Order[18] (Doc. 158) dated the same day. Based on the Debtor's request for a continuance, the Court reset the Debtor's Motion to Vacate to be heard on July 31, 2025. The Debtor was present at that hearing and efforts were made to explain to the Debtor (1) that her plan payments had to increase in order to pay off the claims in her case within the 60-month period from the date the case was originally filed as a Chapter 13,[19] and (2) the claims that must be paid included both claims originally filed and amended claims[20] that added a

---

[17] The docket report reflects that the document was signed by the Debtor's mother. The Court is not aware of the circumstances under which this document was signed or filed.

[18] In this Order the Court also granted the motions requesting a continuance and the motion requesting an extension of time.

[19] A debtor must complete a Chapter 13 plan withing 60 months of the original filing date. For every month that passes while the Debtor's bankruptcy case is pending, whether under Chapter 13 or Chapter 7, the number of months remaining in that 60-month period is likewise reduced. The time that a case is pending under another chapter does not extend the 60-month period, nor does a payment suspension. Put another way, every scheduled payment that is not made to the Trustee must be caught up within the remaining months of the original 60-month period. In order for that to happen, payments must necessarily increase.

[20] Regions Bank, holder of the mortgages on each of the Debtor's real properties, amended both of its claims to include payments that came due post-petition and are still owing as a result of the Debtor's failure to keep the mortgage payments current while this bankruptcy case has been pending. The amended claim on one of the rental properties reflects that the arrearage increased from approximately $5,000 to over $31,000, while the amended claim on the other rental property reflects an increase in arrearage from approximately $4,100 to over $16,000. Thus, it appears that while this bankruptcy case was pending before conversion to Chapter 7 and while under Chapter 7 the Debtor's missed payments on the two mortgages resulted in an additional $37,000 added to her case after the conversion back to Chapter 13. The Debtor must pay the additional arrearage during the Chapter 13 case in order to retain the two properties.

8

significant amount of post-petition mortgage payments that the Debtor had failed to pay, including payments not made before the conversion to Chapter 7 and while the case was pending under Chapter 7. Although the Debtor was present at the hearing on her Motion to Vacate she did not offer any evidence or legal authorities in opposition to the Trustee's Motion to Modify. On August 1, 2025, the Court entered its Order denying the Debtor's Motion to Vacate. As a result, the Court's Notice and Order granting the Trustee's Motion to Modify, and thereby increasing the Debtor's plan payments, remained a valid, enforceable Order.

Thereafter, in late August 2025, the Debtor filed about a dozen objections to claims alleging miscellaneous grounds that may or not be successful. Since that time, the Debtor has filed at least 15 documents that include, among other things, the following: (1) accusations that the Trustee has improperly diverted her funds and made inappropriate distributions and therefore an accounting of her payments should be made;[21] (2) accusations that the Court failed to set a new claims bar date after the conversion from Chapter 7 back to Chapter 13; (3) apparent attempts in several filings to preserve certain issues; (4) a request to suspend her plan payments, which the Court granted for 90 days as it routinely does in Chapter 13 cases, and (5) other miscellaneous requests, notices and supplements.

**The Debtor's Motion and Regions Bank's Response**[22]

---

[21] In the Debtor's Notice and Motion to Correct and Clarify Post-Conversion Accounting (Doc. 208) the Debtor attached a screenshot taken from a "National Data Center" website. In his Response to Motion to Correct and Clarify Post-Conversion Accounting (Doc. 217), the Chapter 13 Trustee explains:

> [T]he National Data Center (NDC) is separate and apart from the workings of the Trustee's office. Certain bits of data are allowed from the Trustee's information so that debtors and creditors may review various aspects of a case. The NDC, however, is not an arm of the Trustee's office and their information has no bearing on Trustee accounting procedures.

Doc. 217, at 6. The Debtor's motion and the Trustee's response are not addressed in this Memorandum Opinion and Order but will be addressed in a separate order.

[22] There has been some delay between the date of the hearing and the entry of this Memorandum Opinion and Order, partly due to the disruption of the holiday schedule, and partly due to the numerous other motions and objections pending in this same case. The delay has caused no harm to the Debtor, however, because the Court had directed

The Debtor filed the Motion currently before this Court on December 8, 2025, and on December 9, 2025, filed a Notice of Supplemental Exhibit (Doc. 236, the "Supplement") that included a "cure letter" sent to her from Regions Bank regarding the property located at 893 77th Way S. On December 15, 2025, Regions Bank filed its Response thereto.

In the Motion, the Debtor is seeking several forms of relief from this Court. Specifically, the Debtor:

> [M]oves this Honorable Court for entry of an Ex Parte Emergency Temporary Restraining Order ("TRO") to:
>
> (1) Immediately re-impose the automatic stay as to the real property located at 893 77th Way S, Birmingham, Alabama 35206;
> (2) Enjoin any foreclosure, acceleration, publication, or sale activity by Regions Bank;
> (3) Compel a sworn judicial reconciliation of all Trustee and Servicer accounting; and
> (4) Order the immediate preservation of all servicing records.

Doc. 234, at 3.

It appears from her Motion that what the Debtor seeks is for this Court to undo the Order granting the RFS Motion and stop an imminent foreclosure on the property located at 893 77th Way S., even though the property is not the Debtor's homestead and in fact is rental property according to her schedules. In the Motion the Debtor requests that this Court reimpose the stay and prevent Regions Bank from continuing foreclosure proceedings, with this request apparently based, at least in part, on a belief that the stay should have been reimposed upon conversion from Chapter 7 to Chapter 13; however, the Debtor does not cite any statute or case law to support this belief. In addition, the Debtor also asserts that because Regions Bank's "issuance of a default and foreclosure

---

Regions Bank to not take any further action toward foreclosure until the issue has been resolved in this Memorandum Opinion and Order. It should also be noted that during the delay the Debtor could have become further behind on her mortgage payments, although she is presumably still collecting rent and therefore should be making her direct mortgage payments.

10

demand" during a period while her payments to the Trustee were suspended is "an impermissible attempt to manufacture default during active judicial review." Doc. 234, at 5. Again, the Debtor provides no support for this argument.

In its Response to the Debtor's Motion, Regions Bank argues that a request for a TRO cannot substitute for a motion to alter or amend pursuant to Bankruptcy Rule 9023[23] or a motion to obtain relief from a judgment under Bankruptcy Rule 9024.[24] *See* Rules Fed. R. Bankr. P. 9023, 9024. According to Regions Bank, the Debtor's documents cannot be considered as a motion to alter or amend since it was not timely filed and does not raise or argue any grounds for such relief. Regions further notes that Debtor's document is not evidence nor proof of any entitlement to a TRO or other injunctive relief. Further, Regions Bank asserts that the Debtor cannot meet the elements required for a court to issue a TRO.[25]

At the hearing, the Court gave the debtor an opportunity to offer testimony or evidence in support of her Motion. She requested that the Court consider the information contained in the Supplement, specifically the "cure letter" from Regions Bank which reflects that the Debtor is over $14,000.00 in default on her mortgage payments on that property. She also requested the Court take judicial notice of her schedules I and J filed at the time the case was filed. She did not offer any testimony or anything else in support of her Motion.

---

[23] Rule 9023 of the Federal Rules of Bankruptcy Procedure, addressing altering or amending a judgment, specifically states that that Rule 59 of the Federal Rules of Civil Procedure applies in bankruptcy cases, with limited exceptions not applicable in this case. *See* Fed. R. Bankr. P. 9023, 3008, and 8008, Fed. R. Civ. P. 59.

[24] Rule 9024 of the Federal Rules of Bankruptcy Procedure, addressing relief from a judgment or order, provides that, with limited exceptions not applicable here, Rule 60 of the Federal Rules of Civil Procedure applies in bankruptcy cases. *See* Fed. R. Bankr. P. 9024, Fed. R. Civ. P. 60.

[25] Regions Bank does not point out that a request for a TRO must be made by way of an adversary proceeding. *See* Fed. R. Bankr. P. 7001(g) ("a proceeding to obtain an injunction or other equitable relief" is an adversary proceeding.). *See also Thomas v. Cenlar Mortgage Co. (In re Thomas)*, Bankruptcy No. 05-13551-BGC-13, Adversary No. 07-00042, 2007 WL 1192032, at *6 (April 20, 2007) (a request to reimpose the stay is a request for an injunction and requires the filing of an adversary proceeding under Rule 7001).

The Court further gave Regions Bank an opportunity to offer testimony and evidence. The attorney for the Bank requested the Court consider its Response and in particular the attached schedule which seems to reflect payments and credits while this case has been pending.

The Debtor requests other relief that relies on her accusations that Regions Bank and the Trustee have misapplied payments. The Debtor referenced direct payments to Regions Bank but only provides a "confirmation number;" and she did not offer any other evidence or proof of payment at the hearing. She does not include in her filings any information regarding payments that she claims to have made, such as the date, payment amount, or how the payment was tendered.

## CONCLUSIONS OF LAW

As an initial matter, the Court notes that the title of the Debtor's Motion reflects that she is seeking a "temporary restraining order to re-impose the automatic stay." Thus, according to the title, it appears the Debtor is seeking injunctive relief. As discussed *infra*, according to the Federal Rules of Bankruptcy Procedure, injunctive relief must be sought by filing an adversary proceeding. Fed. R. Bankr. P. 7001(g). However, since the Debtor is acting pro se, the Court will address the merits of the Debtor's Motion and not merely deny the relief despite the Debtor not having followed the proper procedural rules.

The filing date of a bankruptcy case remains the same despite any conversion from one chapter to another. 11 U.S.C. § 348(a). *See also In re Wilkinson* 507 B.R. 742, 746 (Bankr. D. Kan. 2014) ("Conversion of a case under § 348 from one chapter of the Code to another does not change the petition date . . . ."). This remains true no matter how many times the case is converted. In a Chapter 13 case, a debtor has 60 months from the date of filing to propose, confirm, and complete a Chapter 13 plan. Since the Debtor's filing date did not change when she converted to Chapter 7 then back to Chapter 13, the Debtor still must make all payments required under her confirmed

12

plan, as modified, within 60 months of her original January 27, 2023 filing date. Her 60-month period will end in January 2028. That means the Debtor has approximately 24 months to finish paying off her case. The time that she spent in Chapter 7 is still counted in the 60-month window. Further, as previously explained to the Debtor by this Court, and explained by the Chapter 13 Trustee in his Response to Motion to Correct and Clarify Post-Conversion Accounting (Doc. 217),[26] the original claims bar date remains the claims bar date – the date is not reset when a case is converted back to Chapter 13.[27]

Just as the filing date and the claims bar date do not reset upon a conversion, orders that were entered prior to conversion remain in effect upon conversion. Here, it appears from the Motion that the Debtor believes that upon conversion the automatic stay either was reimposed or should have been reimposed by the Court. Once a matter is fully presented to a court, a hearing is properly noticed and held, facts are properly before the court and a decision or ruling is made, and the appeal time has long expired, the Court's order becomes a final non-appealable order; once fully adjudicated, such order remains valid and fully enforceable in the case for as long as the case continues.

As set out in the facts, the RFS Motion was properly filed, set for hearing with notice properly given, and a hearing was held. The Debtor's attorney was present at the hearing. As a result of the documents filed in support of the RFS Motion, and no testimony having been given to refute the facts as presented by Regions, it was abundantly clear to the Court that the Debtor

---

[26] The Debtor's Notice and Motion to Correct and Clarify Post-Conversion Accounting (Doc. 208) is not disposed of by the Court in this Memorandum Opinion and Order but will be addressed in a separate order.

[27] Although there is no new bar date, creditors that have filed claims may amend a claim as necessary. *In re Taylor*, 280 B.R. 711, 715 (Bankr. S.D. Ala. 2001) ("Claims may be freely amended unless they raise an entirely different claim."); *see also In re Conley*, 673 B.R. 596 (Bankr. S.D. Ala. 2025). For example, in this case, Regions Bank amended each of its claims (Claims 18 and 19) after the case converted back to Chapter 13. The amended claims included additional payments that were not made by the Debtor after the case was filed, such as payments perhaps not made while the case was a Chapter 7. Because the amendments to the claims were based on the same notes and mortgages, and merely added to the amounts due, the amendments cannot be considered "entirely different" claims.

was at least one year behind on mortgage payments at that time. The mortgage payoff in late 2024 was $122,671.07, almost as much as the $123,000.00 amount she originally borrowed in 2020. It was clear that the Debtor had not made mortgage payments as required. Further, upon review of documents filed in connection to the RFS Motions, and a review of the Debtor's schedules that were signed under penalty of perjury, it was clear that the value of the house was $122,900.00, just barely over the loan payoff. When the RFS Motion was filed, there was no equity at all in the property for the bankruptcy estate, the Debtor was proceeding under Chapter 7 and therefore no reorganization was imminent, and the property was not necessary for the Debtor to keep as she did not live there.[28] Thus it was clear that pursuant to Bankruptcy Code § 362(d)(1) and (2), relief from stay was due to be granted. Because of the foregoing, the Chapter 7 trustee did not oppose the motion since he could not recover any equity from the property that could be used to pay creditors. The Debtor's attorney, being well-acquainted with the case and knowledgeable of bankruptcy law, apparently did not have a basis upon which to oppose the RFS Motion. As a result, the RFS Motion was granted by Order (Doc. 91) dated and entered November 1, 2024. There was no timely filed motion to alter or amend and no timely appeal. The Court's Order granting relief was properly entered and remains valid.

As explained by Judge Hageneau in a bankruptcy case from Georgia:

"Under the law of the case doctrine, a legal decision made at one stage of the litigation, unchallenged in a subsequent appeal when the opportunity existed, becomes the law of the case for future stages of the same litigation, and the parties are deemed to have waived the right to challenge that decision at a later time." *United States v. Escobar-Urrego*, 110 F.3d 1556, 1560 (11th Cir. 1997) (quoting *Williamsburg Wax Museum v. Historic Figures*, 810 F.2d 243, 250 (D.C. Cir. 1987)). Law of the case ensures "an issue decided at one stage of a case is binding at later stages of the same case." *Aldana v. Del Monte Fresh Produce N.A., Inc.*,

---

[28] In her filings the Debtor tries to suggest that she needs the rental income for her bankruptcy to be successful, but if she has in fact been receiving rental payments since this case was filed, and she was at least 12 months behind on the mortgage payments in late 2024, the rental payments were not being used to pay the mortgage as one would expect.

578 F.3d 1283, 1288-89 (11th Cir. 2009) (citation omitted). As explained by the Eleventh Circuit, this is a

> rule of practice under which a rule of law enunciated by a federal court "not only establishes a precedent for subsequent cases under the doctrine of stare decisis, but [also] establishes the law which other courts owing obedience to it must, and which it itself will, normally, apply to the same issues in subsequent proceedings in the same case.

> *In re Justice Oaks II, Ltd.*, 898 F.2d 1544, 1550 n.3 (11th Cir. 1990) (quoting *Morrow v. Dillard*, 580 F.2d 1284, 1289 (5th Cir. 1978)) (additional citation omitted). Law of the case thus is a form of issue preclusion, but it differs from collateral estoppel "in that the former applies only to proceedings within the same case, while the latter applies to proceedings in different cases." *Id.*

*Nilhan Dev., LLC v. Glass (In re Nilhan Dev., LLC)*, 631 B.R. 507, 523 (Bankr. N.D. Ga. 2021) (Hagenau, J.) Similarly, Judge Olack in the Southern District of Mississippi noted "'when a court decides upon a rule of law, that decision should continue to govern the same issue in subsequent stages in the same case.'" *In re Mitchell*, Case No. 15-00852-NPO, 2018 WL 6978623, at *2 (Bank. S.D. Miss. Dec. 21, 2018) (quoting *Bayou Steel Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 487 F. App'x 933, 936 (5th Cir. 2012)).

The case before the Court falls squarely within the "law of the case" doctrine which, as noted above, once a court rules on a matter or requested relief, that ruling remains constant through the case and is not due to be set aside or ignored. The ruling becomes the law of the case and is due to be followed and enforced. Therefore, it is clear to this Court that this Debtor did not oppose the RFS Motion, and that she had no viable grounds upon which to oppose it, because the mortgage was at least one year past due, the Debtor had no equity in the property, and the Debtor was proceeding in Chapter 7. That the Debtor is now in a Chapter 13 does not change what has happened previously in this case.

15

Courts have disagreed as to whether or not the stay may be reimposed once it has been lifted:

> Several courts have persuasively held that once the automatic stay has been lifted, the bankruptcy court is without authority to reimpose the stay. *See In re John P. Hale*, 128 B.R. 310, 312 (Bankr.N.D.Fla.1991); *In the Matter of Terramar Mining Corp.*, 70 B.R. 875, 877 (Bankr.M.D.Fla.1987); *Home Life Ins. Co. v. Abrams Square II, Ltd.*, 95 B.R. 51 (N.D.Tex.1988). However, as several courts have acknowledged, bankruptcy courts have equitable jurisdiction under the provisions of 11 U.S.C. § 105 to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." Nonetheless, such a proceeding would be an attempt "to obtain an injunction or other equitable relief" under Rule 7001.

*Stacy Fuel and Sales, Inc. v. Ira Phillips, Inc. (In re Stacy)*, 167 B.R. 243, 248 (N.D. Ala. 1994).

Bankruptcy Rule 7001 provides that injunctive relief is to be sought through filing an adversary proceeding. Fed. R. Bankr. P. 7001(g). Again, this Court recognizes that the Debtor is acting pro se and will address the Debtor's Motion despite that the requested relief should have been sought by way of an adversary proceeding.

For the Debtor to receive the injunctive relief of a temporary restraining order, or more specifically in this case for the automatic stay to be reimposed, there are certain elements that the Debtor must establish: 1) a substantial likelihood of success on the merits of her underlying request to reimpose the stay; 2) that she will suffer irreparable harm without injunctive relief; 3) that the potential injury to her outweighs the damage that might be suffered by Regions; and 4) that issuance of an injunction would not be adverse to the public interest. *See In re Timmons*, 479 B.R. 597 (Bankr. N.D. Ala. 2013). In this case, Debtor did not offer evidence or testimony or any legal authority to support any of the grounds she argues in her documents. Because there is no testimony or other evidence, and no law cited, the Court relies on the record in this case and draws the following conclusions.

16

Regarding the first element, the substantial likelihood that the Debtor could succeed on the merits of her underlying request, i.e., convincing the Court to reimpose the stay, is low. The Debtor's mortgage payments were contractually due for the September 2023 through September 2024 payments at the time the RFS Motion was filed (*see* Doc. 81), and now contractually due for at least the July 2024 through November 2025 payments pursuant to the "cure letter" attached to the Supplement (*see* Doc. 236, at 4-5).[29] Even if the Debtor owes "only" the July 2024 through November 2025 payments, the Debtor is still more than one year behind. Given that the Debtor's payment history, including her apparent current inability to make payments, there is little likelihood that the Debtor could ultimately succeed on the merits.

With regard to the second element, the potential harm to the Debtor if injunctive relief is not granted, the Court notes that at the time relief from stay was granted she had no equity in the property; thus, without payments having been made, the Debtor still has no equity to protect and will not suffer any harm if injunctive relief is not granted.[30] In addition, to the extent that the Debtor suggests that she needs the rental income to fund her Chapter 13, it raises the issue that any rental income received from the property should have been used first to pay the debt secured by the property, which it appears that she does not do, and not fund the Debtor's case.

As to the third element, whether the potential injury to the Debtor outweighs the damage to Regions Bank, it is apparent that the harm that Regions Bank is suffering is significantly greater. The Debtor has missed twelve to eighteen months of regular mortgage payments due to Regions

---

[29] It is unclear whether the Debtor still owes the payments for September 2023 through June 2024 that were included on the Fact Summary Sheet (Doc. 81) filed in conjunction with the RFS Motion. It is clear that the Debtor contractually owes at least the July 2024 through November 2025 payments according to the "cure letter" (Doc. 236, at 405). Regardless, the Debtor has not presented any undisputed and credible evidence that she has made any payments since the RFS Motion was granted.

[30] The Debtor represents in her Motion to Re-Impose that this property produces rental income; if in fact it did and it does, why was the rent not used to maintain the mortgage payments to prevent the Order granting the RFS Motion a year ago?

17

Bank on the loan secured by the property. Regions Bank is not getting the benefit for which it bargained. Regions Bank has been delayed in taking action to collect the debt while this case has been pending. There is no equity cushion to protect Regions Bank. Therefore, the harm to Regions Bank is substantial and outweighs any potential harm to the debtor.

As to the fourth element, whether the issuance of the injunction would be adverse to the public interest, granting injunctive relief would be adverse to the public interest in this case. In all court proceedings, finality is important. Here, an order lifting the automatic stay was entered over a year ago. There was no timely motion requesting that the Court set aside, alter, or amend that Order and there is no basis for such relief. The Order was not appealed. It is not in the best interests of the public for the Court to set aside an order entered over a year ago that was unopposed at the time, and due to be granted on its merits regardless, without some extraordinary and compelling reason. To do so would be to erode the expectation that litigants, and the public, have that Court orders are final and may be relied on as such. *See Lawrence v. Wink (In re Lawrence)*, 293 F.3d 615, 621 (2nd Cir. 2002) (bankruptcy court is "a forum where finality of court orders is particularly important."); *Corbett v. MacDonald Moving Servs., Inc.*, 124 F.3d 82, 91 ("[F]inality interests are particularly important in the bankruptcy context, where numerous contending claims and interests are gathered, jostle, and are determined and released.").

To the extent that the Debtor is asking for injunctive relief, apart from the fact that such relief should have been requested by way of an adversary proceeding, the Court concludes that the Debtor is not entitled to such relief.

It is important to recognize that the Debtor has not presented to this Court any admissible evidence that would support a contention that either the order granting relief form the stay should

18

be altered or set aside, or that the automatic stay should be imposed. This Court has previously explained:

> Black's Law Dictionary defines proof as "[t]he establishment or refutation of an alleged fact by evidence ...." PROOF, Black's Law Dictionary (11th ed. 2019). In turn, evidence is defined as "[s]omething (including testimony, documents, and tangible objects) that tends to prove or disprove the existence of an alleged fact ...." EVIDENCE, Black's Law Dictionary (11th ed. 2019). See also *U.S. v. Trainor*, 376 F.3d 1325, 1331 (11th Cir. 2004). "'Evidence' has also been defined to mean any species of proof legally presented at the trial of an issue, by the act of the parties and through the medium of witnesses, records, documents, concrete objects, and the like." *Id.* (quoting 31A C.J.S. Evidence § 3, at 67–68 (1996)).

*Haney v. Schilling (In re Haney)*, Case No. 21-02007-TOM-13, A.P. No. A.P. No. 21-00045-TOM, 2022 WL 412809, at *16 (Bankr. N.D. Ala. Feb. 10, 2022). At the hearing on the Motion, the Debtor made no arguments and simply relied on what had already been filed into ECF. The Debtor has not identified any statutes, rules, or case law that would allow the Court to set aside the prior order or reimpose the automatic stay. The Debtor has made arguments in her filings, occasionally using legal jargon that may not be applicable, but without "the medium of witnesses, records, documents, concrete objects, and the like." *See id.* For example, the Court notes that although the Debtor included with her Motion what she refers to as a "verified affidavit," the purported affidavit only makes general statements that track her allegations but provides no specific, pertinent, applicable or relevant facts. Further, while the document may be titled by the Debtor as an affidavit, it is not notarized and it does not conform to the requirements of an affidavit. The document is not an affidavit merely because the Debtor claims that it is or gives it that title. This Court is bound to follow the case law, federal rules, federal statutes, as well as the law of this case, and therefore, the Court cannot set aside the prior order or reimpose the stay.

It should also be addressed that in her Motion the Debtor references this Court's November 25, 2025 Order (Doc. 230, the "Suspension Order") suspending her plan payments for 90 days,

and states that Regions Bank's actions in pursuit of a foreclosure during the payment suspension is "an impermissible attempt to manufacture default during active judicial review."[31] Doc. 235, at 5. In the Suspension Order this Court suspended the Debtor's payments to the Chapter 13 Trustee and nothing else. The Suspension Order does not suspend any payments that the Debtor should be making directly pursuant to the confirmed plan as modified, and in fact, does not mention the direct payments to Regions Bank at all. That the Debtor's plan payments to the Chapter 13 Trustee were suspended for 90 days in no way alters, amends or invalidates either the requirement that she make direct mortgage payments or the Order granting the RFS Motion.

In reliance on the Order granting the RFS Motion, Regions Bank may take any action or pursue any state law remedy it deems appropriate regarding this property without running afoul of this bankruptcy case or any bankruptcy law or rule. Further, if the Debtor has questions regarding the state law remedies sought by Regions Bank, as noted by Regions Bank in its Response, she may raise those in the state court as any such issues are not properly before this Court due to relief from stay having been previously granted. In all respects, the subject property is no longer a part of this bankruptcy case. The Debtor already has an objection to the claim of Regions Bank pending which will be adjudicated by this Court at the appropriate time. At the time the objection was filed, the Debtor did not apparently realize Regions Bank might be pursuing its state law remedies, since her objection is based on other grounds. However, with that objection pending, no disbursement on the Region Bank claim will be paid by the Chapter 13 Trustee. In addition, if Regions Bank forecloses, it may withdraw its claim, which would render her objection to the claim moot. Alternatively, Regions may amend its claim to reflect any deficiency that remains after a foreclosure sale.

---

[31] This is another example of the Debtor making statements using legal jargon without providing relevant law or admissible evidence to support what she claims.

Case 23-00226-TOM13    Doc 252    Filed 01/23/26    Entered 01/23/26 12:17:06    Desc
Main Document      Page 20 of 21

The Court notes that it is entirely possible that this Debtor, like many debtors, does not understand how payments are applied consistent with the note and mortgage. For example, if the Debtor is a year behind in her direct mortgage payments, and she remits a payment, generally the payment is applied not to the month and year when the payment is tendered but to the month that the payment is contractually due, or in other words basically to the first month that a payment has been missed. Further, it is possible that the Debtor does not understand how the Chapter 13 Trustee applies payments in all Chapter 13 cases, although the Trustee has attempted to explain the process through documents he has filed. Nonetheless, the Debtor has repeatedly accused the Trustee of misapplying her payments but has not provided any proof any such misapplication. Since the Debtor is the party making the accusation she has the burden to show through admissible evidence that she has made payments that have been received by the Trustee but not credited. Statements or conclusions that appear in her filings, even if labeled "evidence" or "evidentiary," are not sufficient.

Because the Debtor has not established she is entitled to any relief that she requests in her Motion, it appears to this Court that the Debtor's Motion is due to be denied. It is therefore

**ORDERED, ADJUDGED, and DECREED** that the Debtor's Ex Parte Emergency Motion for Temporary Restraining Order, to Re-Impose Automatic Stay, to Enjoin Foreclosure, to Compel Servicer Reconciliation, and to Preserve Evidence as to Regions Bank is **DENIED**.

Dated: January 23, 2026                    /s/ Tamara O. Mitchell
                                           TAMARA O. MITCHELL
                                           United States Bankruptcy Judge


TOM/dgm